**Everett S. COLLINS, Appellant,**

v.

**Warren MUNSON d/b/a Munson's Garage, Appellee.**

**No. 52200.**

Court of Appeals of Oklahoma, Division No. 2.

March 27, 1979.

Rehearing Denied May 1, 1979.

As Modified July 23, 1979.

Released for Publication by Order of Court of Appeals Aug. 23, 1979.

W. Creekmore Wallace, II, Sapulpa, for appellant.

Bob J. Vinzant, Claremore, for appellee.

BRIGHTMIRE, Judge.

Is a repair shop owner who is claiming a possessory lien on personal property to secure payment for labor on and storage of the property obligated to volunteer information about or explanation of his lien rights to a prospective purchaser examining the property? The trial court held he was not. We affirm.

I

This replevin action was begun by Everett Collins, the purchaser of three large air compressor units—one mounted on a 1961 Chevrolet truck—against Warren Munson, doing business as Munson's Garage, who claimed a possessory lien on the equipment as security for an unpaid repair and storage bill. Munson posted a redelivery bond, retained the equipment, and later filed an answer alleging that he has a valid lien on the property under 42 O.S.1973 Supp. § 91 for work he performed on it which predates Collins' acquisition of the personalty. He asked the court to let him sell the property or else order Collins to pay for the work done, storage costs, and Munson's attorney's fee.

At a non-jury trial the parties stipulated that a man by the name of R. W. Reynolds, doing business as Midwestern Paint Store, owned subject equipment and had taken it to Munson's Garage for repair. Munson had worked on one of the units, and it was still broken down on August 4, 1975. On this date, Reynolds and Collins came to the garage and got permission from Munson for Collins, a prospective purchaser, to examine the equipment. Munson assented and accompanied them to where it was located. During the visit, Collins did not inquire of Munson why the equipment was in the shop or whether Reynolds owed any money for its repair which might be the subject of a possessory lien, and Munson did not volunteer any such information.

A few days later, Collins bought the machinery along with other property from Reynolds for $8,200 by paying off a note of Reynolds held by a bank. The following week Collins called Munson and asked if he would fix a head of one of the compressors. Munson told him he would not unless he was paid $1,093.40 for the repair work he had already performed and $590 for storage.

Collins declined to pay the charges. Munson began proceedings to foreclose his possessory lien by filing a notice to sell the property as authorized by 42 O.S.1973 Supp. § 91. Collins filed a lawsuit to enjoin the sale and then dismissed it. In the meantime, Reynolds filed a voluntary petition in bankruptcy listing the Munson debt as an unsecured claim. On February 11, 1976, Collins filed this replevin action.

Collins contended in the trial court and continues to do so here that he has a right to possession superior to that of Munson because the repairman's failure to advise Collins of his possessory lien claim the day the latter was in the garage examining the equipment as a prospective purchaser had the effect of making Collins a bona fide purchaser for value without knowledge of Munson's lien. Or, to put it in other legal words, Munson's earlier silence estops him now from claiming possessory lien rights.

## II

The weakness inherent in Collins' main theorem is that it implies Munson had a duty to speak up under the circumstances and assert his lien. Whence arose such a duty? We know not. Munson did all that was required of him to perfect his lien—he retained possession. He did not have to publish or file notice; he did not have to tell anyone anything. Nor did Munson make a partial disclosure to the visiting Collins which might have called for a complete revelation of fact. The stipulated fact is that Munson did the only thing the parties requested him to—he let Collins see the equipment.

■ The second crippling weakness facing Collins is that he had sufficient knowledge to put him on inquiry concerning Munson's possessory rights in the property. Collins presumably knew that Reynolds owed the bank for the equipment. He knew that the property was located at Munson's for repair and that Munson had done some work on at least one of the compressors. He knew, or he is presumed to have known, that Munson had a lien on the equipment to secure payment of any unpaid repair charges which was dependent upon retention of possession. Under these circumstances, Collins was obliged to inquire of Munson about any outstanding charges or claims which might be the foundation for a possessory lien.

Neglecting such inquiry, Collins bought the equipment several days later and received Reynolds' title subject to the lien rights of Munson. The trial court did not err, therefore, in adjudging Munson to have a valid possessory lien on the equipment.

## III

Appellant Collins' last complaint is that the trial court should not have awarded Munson storage compensation for the period between the time Collins filed his replevin bond and the date of judgment. The short answer to this is that the "Journal Entry" does not disclose that the court awarded storage costs in any amount. All that document recites—it contains no judgment except by implication—is that the court "finds for the defendant on plaintiff's petition and awards defendant a lien upon the property of plaintiff in the amount of $1,093.40 plus $1.00 per day storage for 976 days, plus costs of the action."

Collins, however, filed a post judgment motion stating that the court did render a judgment against him for $2,069.40 and that he had filed an appeal bond which "has eliminated the need for defendant [Munson] . . . to retain the secured property . . . over which [he] asserts his lien." And, because plaintiff wanted possession of said personal property, he asked the court to order Munson to turn the property over to plaintiff "and allow the bond set for

appeal in the amount of $4,000 to stand in the place of said personal property as security on this judgment."

Over defendant's objection, the trial court on July 28, 1978 approved plaintiff's "Appeal Bond," denied Munson's request for his attorney's fee on the ground it came too late as a result of which the "court is without jurisdiction to award same," but then turned around and ordered defendant "to return the personal property in question forthwith."

This order was and is void. The trial court had no jurisdiction to order Munson to do anything. Munson presumably complied with the order because he asks that the judgment of the trial court be affirmed and judgment be granted on the supersedeas bond.

### IV

We think this court has the equitable power to render such a judgment under the incredible circumstances of this case. Collins, to gain possession of the equipment, in effect confessed judgment in favor of Munson for $2,069.40, and, through an appeal bond, Collins, as principal, and Jack Sellers and Glen Henson, as sureties, became bound to pay the judgment plus all costs and interest secured by a bond lien on Lot 26, Block 5 in the Original Town of Drumright, Oklahoma.

The judgment appealed is affirmed and Warren Munson is hereby granted judgment against Everett S. Collins, Jack Sellers, and Glen Henson in the amount of $2,069.40 together with interest thereon at the rate of 10 percent per annum from March 22, 1978 until paid and all court costs.

BACON, P. J., and NEPTUNE, J., concur.